UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| SUMMERTIME PRODUCE, LLC, | ) |
| Plaintiff, | ) |
| v. | ) No. 2:19-cv-00213-JPH-DLP |
| ATLANTIC PRODUCE EXCHANGE, LLC, | ) |
| Defendant. | ) |
| First Robinson Savings Bank, N.A., | ) |
| Interested Party. | ) |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

Summertime Produce, a grower of seedless watermelons based in southern Indiana, entered into an agreement for Atlantic Produce to be the exclusive agent for marketing, selling and distributing its watermelons. Summertime alleges that Atlantic breached that agreement when it failed to collect and distribute a substantial portion of Summertime's 2018 watermelon crop. Summertime seeks to recover damages for the watermelons it was not able to market and distribute as a result of the alleged breach. Atlantic has filed a motion to dismiss based on lack of personal jurisdiction and improper venue. Dkt. [11]. For the reasons that follow, Atlantic's motion to dismiss is **DENIED**.

# I.
# Facts and Background

Because Atlantic has moved for dismissal under Rule 12(b)(2) and (3), the Court accepts "as true all well-pleaded facts alleged in the complaint and resolve any factual disputes in the affidavits in favor of the plaintiff[]" *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019) (quoting *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010)).[1]

Summertime is an Indiana limited liability company with its principal offices in Vincennes, Indiana. Dkt. 1 at 1 (Compl. ¶ 1). Summertime grows watermelons for distribution. *Id.* at 2 (¶ 8).

Atlantic is a Florida limited liability corporation with its principal offices in Tallahassee, Florida. *Id.* at 1 (¶ 2); dkt. 10-1 at 2 (¶ 3). Atlantic is a marketing agent. Dkt. 1 at 2 (¶ 8).

In March 2014, Stephen Kline, an Atlantic employee, traveled to Indiana to solicit Summertime's business. Dkt. 14-1 at 2 (Ellermann Aff. ¶ 3). Summertime later hired Atlantic as its exclusive sales agent responsible for marketing, selling, and distributing watermelons. *Id.* This relationship lasted nearly five years, until 2018. *Id.* (¶ 4). For each year, Atlantic was paid a sales commission for each sale of watermelon. Dkt. 10-1 at 4 (¶ 17). Each year, an

---

[1] Because no material facts are disputed, Atlantic's request for an evidentiary hearing, dkt. 11 at 1, is **denied**. *See Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 912 (7th Cir. 2015) ("If material facts about personal jurisdiction are in dispute, the court must hold an evidentiary hearing to resolve them.") (internal quotations omitted).

Atlantic employee would contact Ethan Ellermann, Summertime's owner and operator, to renew the exclusive-sales-agent agreement. Dkt. 14-1 at 2 (¶ 4).

To carry out the parties' agreement, Atlantic would send a Field Manager and a Food Safety Coordinator to Summertime's farm in Indiana. *Id.* at 2–3 (¶ 5); dkt. 10-1 at 6 (¶ 23). The Field Manager would spend about a month and a half at Summertime's farm overseeing the harvest, instructing harvesting operations, preparing bills of lading, and coordinating the loading of watermelons for transportation and distribution. Dkt. 14-1 at 2–3 (¶ 5).[2] The Food Safety Coordinator would spend about seven to ten days at Summertime's farm assisting and complying with the food safety audit. *Id.* at 4 (¶ 8). Atlantic would also send tractor trailers to Summertime's fields in Indiana to load the watermelons for distribution. *Id.* at 3 (¶ 7). Atlantic performed the marketing services in Florida. Dkt. 10-1 at 5 (Kline Decl. ¶ 18).

In January 2018, the parties entered into a verbal watermelon distribution agreement (the "2018 Agreement"). Dkt. 14-1 at 3 (¶ 7). The 2018 Agreement required Summertime to plant, pack, and harvest 277.7 acres of watermelons. *Id.* at 4 (¶ 9). Atlantic advertised on its website that it was selling 280 acres of Summertime's watermelons from Indiana. *Id.* Kevin

---

[2] Atlantic contests Summertime's assertion that it oversaw the harvest and instructed harvesting operations, dkt. 17 at 5 (Kline Decl. ¶ 9), but that doesn't matter for the purpose of resolving the motion to dismiss because Atlantic does not contest that its Field Manager performed the other duties in Indiana as described by Summertime. *See* dkt. 10 at 4, 6 (¶¶ 16, 23–24); dkt. 17 at 3–4 (¶ 7); dkt. 18 at 7, 8 (¶¶ 13, 16–17). Moreover, "[i]n evaluating whether the prima facie standard has been satisfied, the plaintiff 'is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record.'" *Purdue Research*, 338 F.3d at 782 (quoting *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983)). Indeed, the Court "resolve[s] any factual disputes in the affidavits in favor of the plaintiff[]." *Matlin*, 921 F.3d at 705 (quoting *Tamburo*, 601 F.3d at 700.).

3

Baxter, Atlantic's Field Manager, arrived at Summertime's farm about July 13, 2018 and left about August 23, 2018. *Id.* at 3 (¶ 6). Sallie Boles, Atlantic's Food Safety Coordinator, arrived at Summertime's farm about July 20, 2018 and left about July 28, 2018. Dkt. 18 at 4 (¶ 4). During the 2018 season, Atlantic sent approximately 187 tractor trailers to Summertime's farm to transport the loads of watermelons to each buyer. Dkt. 14-1 at 3 (¶ 7). But Atlantic failed to sell and distribute a significant portion of Summertime's watermelon crop. *Id.*

The complaint brings claims based on federal law, breach of express and implied duties under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499, *et seq.*, and Indiana law, breach of fiduciary duty. Dkt. 1.

Atlantic filed a motion to dismiss alleging lack of personal jurisdiction and improper venue. Dkt. 11.[3]

## II.
## Applicable Law

Where a defendant moves under Federal Rule of Civil Procedure 12(b)(2) to dismiss claims for lack of personal jurisdiction, the plaintiff bears the burden of making a prima facie showing of personal jurisdiction. *Matlin*, 921 F.3d at 705. The Court accepts as true the well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *Id.* The Court may consider affidavits and all other documentary evidence that have been filed, and any conflicts must be resolved in favor of the plaintiff as the non-moving

---

[3] Summertime's motion for leave to file a sur-reply is **GRANTED**. Dkt. [20].

party. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003); *see Matlin*, 921 F.3d at 705.

A defendant may also move under Federal Rule of Civil Procedure 12(b)(3) to dismiss claims for improper venue. As with a Rule 12(b)(2) analysis, the plaintiff bears the burden of establishing proper venue. *Carroll v. CMH Homes, Inc.*, 4:12-CV-23-SEB-WGH, 2013 WL 960408, at *2 (S.D. Ind. Mar. 12, 2013). The Court accepts as true the well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *See Deb v. Sirva, Inc.*, 832 F.3d 800, 809 (7th Cir. 2016); *see also Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809–10 (7th Cir. 2011) (the court may consider matters outside of the pleadings). If venue is improper, the Court "shall dismiss [the case], or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *See* 28 U.S.C. § 1406(a).

### III.
### Analysis

#### A. Personal Jurisdiction

Summertime brings claims based on both federal and state law. The Court has federal question jurisdiction over the claim brought under PACA, 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claim, 28 U.S.C. § 1367. The Court thus has personal jurisdiction over Atlantic if either federal law or Indiana law authorizes service of process to Atlantic. *Curry v. Revolution Labs., LLC,* 949 F.3d 385, 393 (7th Cir. 2020). PACA—the federal statute under which Summertime brings it claim—does not authorize

5

nationwide service of process so the Court may exercise personal jurisdiction over Atlantic only if authorized by Indiana law and the United States Constitution. *Id.* Indiana's long-arm statute authorizes personal jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause, *LinkAmerica Corp. v. Albert*, 857 N.E.2d 961, 966–67 (Ind. 2006), so the only question is whether the exercise of personal jurisdiction over Atlantic "comports with the limits imposed by federal due process." *Curry*, 949 F.3d at 393 (quoting *Walden v. Fiore*, 571 U.S. 277, 283 (2014)).

Atlantic argues the Court does not have specific jurisdiction over it because Summertime's claims do not arise out of Atlantic's contacts with Indiana. Dkt. 11 at 12. Atlantic further contends that the alleged wrongdoing occurred in Florida, where Atlantic entered into distribution agreements with multiple growers allegedly in competition with Summertime and where it marketed other grower's watermelons instead of Summertime's crop. *Id.*

Summertime responds that Atlantic purposefully availed itself of opportunities in Indiana by: (1) traveling to Indiana to solicit Summertime's business; (2) marketing, selling, and distributing watermelons for Summertime for the 2014, 2015, 2016, 2017, and 2018 watermelon seasons; (3) advertising Summertime's watermelons on its website; (4) sending two employees each year to Indiana to oversee the harvesting and distribution of Summertime's watermelons; (5) sending a food safety coordinator each year to Indiana to assist with the food safety audit; and (6) sending over 100 tractor trailers each year to Indiana for transportation of the watermelons. Dkt. 14 at 7–10.

6

Summertime asserts that "Atlantic's ultimate failure occurred in Indiana where it failed to send tractor trailers to distribute at least 200 loads of watermelons that spoiled and had to be dumped." *Id.* at 11.

There are three "essential requirements" for a court to exercise specific jurisdiction over an out-of-state defendant:

> First, the defendant's contacts with the forum state must show that it purposefully availed [itself] of the privilege of conducting business in the forum state or purposefully directed [its] activities at the state. Second, the plaintiff's alleged injury must have arisen out of the defendant's forum-related activities. And finally, any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice.

*Curry*, 949 F.3d at 398 (quoting *Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874, 878 (2019)). "The defendant's conduct and connection with the forum state must be substantial enough to make it reasonable for the defendant to anticipate that he could be haled into court there." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014). The primary focus of this inquiry is the defendant's relationship to the forum state. *See Walden*, 571 U.S. at 284.

### 1. Purposeful Availment

The first requirement asks whether the defendant "purposefully availed [itself] of the privilege of conducting business in the forum state or purposefully directed [its] activities at the state." *Curry*, 949 F.3d at 398 (quoting *Lexington Ins. Co.*, 938 F.3d at 878). Atlantic does not contest that it purposefully availed itself of conducting business in Indiana. *See* dkt. 19 at 12–13, n. 2. Moreover, the evidence showing that Atlantic availed itself of the privilege of conducting

7

business in Indiana is ample for the Court to conclude that Atlantic is not required to defend this lawsuit for merely "random, fortuitous, or attenuated contacts" with Indiana. *Curry*, 949 F.3d at 398. Atlantic has sufficient minimum contacts with Indiana to support personal jurisdiction.

### 2. Injury "Arises Out Of" or "Relates to" Atlantic's Contacts with Indiana

Personal jurisdiction also requires that the defendant's minimum contacts with the forum-state be "*suit-related.*" *Curry*, 949 F.3d at 400 (emphasis in original). This requires the Court to evaluate whether there is a "connection between the forum and the specific claims at issue." *Id.* The question is whether Atlantic's contacts with Indiana "directly relate to the challenged conduct or transaction" such that Summertime's injury "arises out of" Atlantic's contacts. *Tamburo*, 601 F.3d at 702; *see also Felland v. Clifton*, 682 F.3d 665, 676 (7th Cir. 2012). While the Seventh Circuit has not resolved the question definitively, *see Tamburo*, 601 F.3d at 709, it has "suggested in passing that a mere 'but for' causal relationship is insufficient to establish the required nexus between a defendant's contacts and the underlying cause of action." *Felland*, 682 F.3d at 676–77 (citing *GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1025 (7th Cir. 2009)).

Here, even under the strictest understanding of the "arising out of" requirement, *see Felland*, 682 F.3d at 677, Atlantic's contacts with Indiana are clearly related to the claims brought by Summertime in this case. Pursuant to the 2018 Agreement, Atlantic was the exclusive agent for marketing, selling

8

and distributing Summertime's watermelons. Dkt. 14-1 at 1 (¶ 3). Also pursuant to the 2018 Agreement, Atlantic's Field Manager spent over a month in Indiana working onsite at Summertime performing duties in preparation for loading, transporting and distributing the watermelons. *Id.* at 2–4 (¶¶ 5–8). Atlantic's Food Safety Coordinator spent about a week performing duties in preparation for loading, transporting and distributing the watermelons. Dkt. 18 at 4 (¶ 4). During the 2018 season, Atlantic sent approximately 187 tractor trailers to Summertime's farm to transport the loads of watermelons to each buyer. Dkt. 14-1 at 3 (¶ 7).

The claims are based on allegations that Atlantic breached its obligations in the 2018 Agreement when it failed to transport, distribute and sell Summertime's watermelons. *See* dkt. 1. Atlantic was obligated under the 2018 Agreement to "receive and sell [watermelons]" that Summertime packed and prepared for Atlantic to pick up and failed to "accept additional watermelons", which were left unharvested and unsold. *Id.* at 3, 4 (¶¶ 19a, 19c). As a result of Atlantic's failure to transport and sell the watermelons as agreed to, Summertime was left with acres of watermelons that could not be harvested or sold. *Id.* at 3 (¶ 14).

Atlantic argues that Summertime's cause of action arises out of Atlantic's marketing or lack thereof, which is done in Florida. Dkt. 11 at 12. Atlantic asserts that none of the facts that "caused" Summertime's losses—entering into marketing agreements with other growers and selling their watermelons—occurred in Indiana. *Id.*; dkt. 19 at 16–17. But Atlantic's duties included

9

marketing, selling, and *distributing* Summertime's watermelons from the farm in Indiana, to buyers. Dkt. 14-1 at 2 (¶ 3) (emphasis added). And Summertime contends that "[a]t least 200 loads of watermelons spoiled in Indiana due to Atlantic's failure to comply with the 2018 Agreement to pre sale and send tractor trailers to Summertime's farm in Indiana to load and transport Summertime's watermelons." *Id.* at 2–3 (¶ 7).

Atlantic's contacts with Indiana are clearly related to Summertime's claims so those claims arise directly out of Atlantic's contacts with Indiana. *Curry*, 949 F.3d at 400; *Tamburo*, 601 F.3d at 709.

### 3. Traditional Notions of Fair Play and Substantial Justice

Last, the Court must determine whether the exercise of personal jurisdiction over the out-of-state defendant would offend traditional notions of fair play and substantial justice. *Curry*, 949 F.3d at 402 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, (1945)). In making this determination, the Court considers:

> [T]he burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of [the underlying dispute], and the shared interest of the several States in furthering fundamental substantive social policies.

*Id.* (quoting *Purdue Research*, 338 F.3d at 781 (internal quotation marks omitted); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). "When the defendant's minimum contacts with the forum are relatively weak (although existent), these considerations may militate in favor of the exercise of

jurisdiction." *Curry*, 949 F.3d at 402 (quoting *Purdue Research*, 338 F.3d at 781).

Summertime has demonstrated that Atlantic had sufficient minimum contacts with Indiana, and the "fair play and substantial justice" factors weigh in favor of the exercise of personal jurisdiction. Atlantic has not made a "compelling case that the presence of some other considerations would render jurisdiction unreasonable", so there is no unfairness to subjecting Atlantic to jurisdiction in Indiana. *Id.* (quoting *Burger King*, 471 U.S. at 477).

Summertime has made the requisite prima facie showing that this Court's exercise of personal jurisdiction over Atlantic "comports with the limits imposed by federal due process" so Atlantic's motion to dismiss for lack of personal jurisdiction is **denied**.[4]

**B. Venue**

Atlantic argues that the Southern District of Indiana is not the appropriate venue for this case. Dkt. 11 at 12–18. Atlantic first contends that Summertime has not shown that the existence of a contractual agreement regarding venue. *Id.* at 12–14. Next, Atlantic contends that the facts do not support venue in this District. *Id.* at 14–15. In response, Summertime concedes there is no contractual agreement, but maintains that venue is proper under 28 U.S.C. § 1391(b)(2), which provides that venue is proper is

---

[4] Because the Court has specific jurisdiction over Atlantic, the Court does not address the issue of general jurisdiction, *see* dkt. 11 at 8–10.

11

where "a substantial part of the events or omissions giving rise to the claim occurred." Dkt. 14 at 11–12.

The same facts that support the exercise of personal jurisdiction make venue in this District appropriate because those facts show that "a substantial part of the events or omissions giving rise to" Summertime's claims occurred in the Southern District of Indiana. *See* discussion *supra* Part A.2. While some of the events alleged by Summertime in support of its claims may have occurred elsewhere, venue is proper so long as "a substantial part"—not all or even a majority—of the events giving rise to the claims in that judicial district. *Engineered Med. Sys. v. Despotis*, No. 1:05-cv-0170-DFH-TAB, 2005 WL 2922448, at *5 (S.D. Ind. Nov. 4, 2005). And venue may be proper in more than one judicial district. *Id.* Accordingly, Atlantic's motion to dismiss for improper venue is **denied**.

## IV.
## Conclusion

Summertime's motion for leave to file a sur-reply brief, dkt. [20], is **GRANTED**.

Summertime has made the requisite prima facie showing that the Court has personal jurisdiction over Atlantic. In addition, Summertime has met its burden in showing that venue is proper. Therefore, Atlantic's motion to dismiss, dkt. [11], is **DENIED**.

**SO ORDERED.**

Date: 5/14/2020

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Timothy Dean Henkel
HENKEL & COHEN, P.A.
tdh@miamibusinesslitigators.com

Craig Alan Stokes
STOKES LAW OFFICE LLP
cstokes@stokeslawoffice.com

Rhonda S. Miller
SMITH & MILLER LLP
rmiller@smithmillerlaw.com